## GARAGES INCLUDED IN THE CLASS OF SHEDS OR BARNS.

Circuit Court of Cuyahoga County.

JOSEPH GROSS v. ISADOR WHITELAW.

Decided, May 22, 1912.

*Building Restrictions—Garage is a Shed or Barn—Estoppel.*

1. A garage may not be built upon a lot restricted against the building of sheds and barns.
2. Failure by one lot owner to object to the building by others of garages upon 14 out of 800 lots in an allotment as to which a uniform plan of improvements and restrictions has been adopted for the benefit of all the lots, will not estop said lot owner from enforcing the restriction with respect to another lot in his neighborhood.

*Hidy, Klein & Harris* and *H. Ewing,* for plaintiff.
*Fred Desberg,* contra.

WINCH, J.; MARVIN, J., and NIMAN, J., concur.

This action was brought to prevent the defendant from building an automobile garage for his own private use upon his premises which are situated on South Boulevard in the city of Cleveland.

Defendant's lot is one of some eight hundred lots, all of which are subject to the same restrictions, imposed by the original proprietor, who laid out the entire property for select residence purposes.

To accomplish this it was provided by deeds to purchasers in this allotment that the several lots should each and all be used for residence purposes only, that no intoxicating liquor should ever be sold upon them, that no building should be erected costing less than $3,000 nor nearer the street line than thirty feet, and that no shed, barn or shop should be erected or placed on any of said lots. By the deeds only hedges or iron fences are permitted, none to be nearer the street than forty feet.

The garage proposed to be built by defendant will cost $1,000 or $1,200.

This structure can not be built because of two prohibitions contained in the restrictions: it is a building which will cost less than $3,000 and it comes within the meaning of the general words "shed and barn."

The derivation of the word "shed" indicates that it is a place erected for shelter and the word is frequently compounded with other words indicating the things usually sheltered in it, as "wood shed, carriage shed, cow shed," etc. If automobiles are sheltered in a building designed to shelter them, such building may properly be called an automobile shed, and in common speech one frequently hears this expression, though owners of automobiles and such sheds have imported the French word "garage," which they use more commonly these days in speaking of the building in which they keep their automobiles, which latter they commonly call motors. It is a matter of taste or style.

The word "barn" originally meant a place where farm produce is stored, but many people in the city call the building in which they keep their horses and carriages a barn, while more properly it should be called a stable, though some have both stables and carriage sheds or carriage houses, as they prefer to call them.

The evident intention of the general restriction imposed on all the lots in this neighborhood is to keep the back yards free from such buildings as are commonly erected in back yards.    The restriction was drafted before automobiles had come into common use, but can it be said that defendant may build a structure which he calls a garage as long as keeps an automobile, and a shed or barn after he disposes of his automobile and stores something else in it?

The particular use to which he proposes to put this building does not change its character completely; it is still a shed.

In evidence it was shown on the trial that there are fourteen lots among the eight hundred in this allotment on which garages have been built without objection being made by plaintiff.    One is across the street from plaintiff's premises and another in the same block.    Defendant's lot is immediately in the rear of plaintiff's lot.

It is claimed by defendant that because plaintiff never attempted to enjoin the erection of said fourteen garages, he is estopped from asking the enforcement of the restriction to the defendant's deed.

The doctrine of estoppel is not to be applied here.    Had the plaintiff erected any of these fourteen garages, or built one on his own premises, he would not come into court with clean hands and should have no relief; or, if garages had been built on so many lots that it appeared that the prohibition had been waived by mutual consent, and that the character of the neighborhood had changed, a court of equity would be slow in enforcing the restriction as to one particular lot; but we see no reason why plaintiff in this case is not entitled to the relief he prays for, and judgment is rendered for him.